**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**
**KANSAS CITY DIVISION**

| | |
|---|---|
| SPORTING INNOVATIONS KC LLC,     ) | |
|                             ) | |
|       Plaintiff,               ) | |
|                             ) | |
| v.                                ) | Case No. _____ |
|                             ) | |
| ASIM PASHA,               ) | |
| Serve:                        ) | **JURY TRIAL DEMANDED** |
| 1305 Huntington Drive      ) | |
| Liberty, MO 64068        ) | |
|                             ) | |
| ZAIN PASHA,              ) | |
| Serve:                        ) | |
| 1305 Huntington Drive      ) | |
| Liberty, MO 64068        ) | |
|                             ) | |
| PWXH, LLC,              ) | |
| Serve:                        ) | |
| Business Filings Incorporated ) | |
| 108 W. 13th St            ) | |
| Wilmington, DE 19801     ) | |
|                             ) | |
| VERNALIS GROUP, INC.,    ) | |
| Serve:                        ) | |
| 8559 75th Street          ) | |
| Woodhaven, NY 11421     ) | |
|                             ) | |
| NADER ("NATE") HANAFY,   ) | |
| Serve:                        ) | |
| 215 E. 80th St., Apt. 2D    ) | |
| New York, NY 10075-0546  ) | |
|                             ) | |
|       Defendants.           ) | |

## <u>COMPLAINT</u>

Plaintiff Sporting Innovations KC LLC, for its claims against Defendants Asim Pasha,

Zain Pasha, PWXH, LLC, Vernalis Group, Inc., and Nader "Nate" Hanafy, states and alleges as

follows:

1

## INTRODUCTION

1.      Sporting Innovations KC LLC ("SI" or "Sporting Innovations") is a technology consulting firm that develops analytical tools and software to partner with professional and college sports teams and venues and to provide fan-engagement strategies to them.

2.      Asim Pasha ("Asim") was the Co-CEO and Co-Founder of Sporting Innovations.

3.      Zain Pasha ("Zain"), Asim's son, joined Sporting Innovations in July 2013 as an Associate, later becoming a Product Manager.

4.      In or around September 2014, Asim and Zain began secretly plotting the formation of a competing company. To do so, they exploited SI's resources, confidential information and trade secrets, business opportunities, and relationships with commercial partners, including Vernalis Group, Inc. ("Vernalis"), and Nader "Nate" Hanafy ("Hanafy"), Managing Director at Vernalis.

5.      Asim and Zain also misused SI's corporate credit card to incur tens of thousands of dollars in personal expenses. Asim and Zain have refused to provide documentation and receipts related to their improper and extravagant spending.

6.      Zain resigned from Sporting Innovations in March 2015. Since March 2015, Asim has failed to appear and work at SI's office, failed to fulfill his job duties and obligations to SI, and has ignored and not responded to SI emails. Asim has failed to return his company-owned laptop to SI's office in Kansas City.

7.      After Zain's resignation from Sporting Innovations in March 2015, Zain has failed and refused to return his company-owned laptop to SI's office in Kansas City. Asim also has failed and refused to return his company-owned laptop to SI's office in Kansas City. By virtue of their improper retention of SI-owned laptops, Asim and Zain possess significant

2

confidential and trade secret information belonging to Sporting Innovations.

8.    Sporting Innovations brings this action to protect its confidential information and trade secrets, to remedy Asim's and Zain's misuse of SI resources, and to recover damages from Defendants' scheme and illegal actions.

9.    Ruf Strategic Solutions is a company based in Olathe, Kansas, and a company with which Sporting Innovations does business.  Kurt Ruf is the Chief Strategy Officer of Ruf Strategic Solutions.  As set forth below, Defendants' scheme appears to have involved Kurt Ruf in some capacity.

## PARTIES

10.    Plaintiff Sporting Innovations KC LLC is a Limited Liability Company organized under the laws of Kansas with its principal place of business at 1511 Baltimore Avenue, Kansas City, MO 64108.  The members of Sporting Innovations KC LLC are limited liability companies whose members are citizens of Kansas, Missouri, and South Dakota.

11.    Upon information and belief, Defendant Asim Pasha resides at 1305 Huntington Drive, Liberty, MO 64068.

12.    Upon information and belief, Defendant Zain Pasha resides at 1305 Huntington Drive, Liberty, MO 64068.

13.    Defendant PWXH, LLC ("PWXH"), is a limited liability company organized under the laws of Delaware.  Upon information and belief, in February 2015 Asim and Zain organized PWXH, and Asim and Zain are both members of PWXH.  Upon information and belief, PWXH's principal place of business is in Missouri and PWXH has applied for and/or obtained a bank account with a bank located in the State of Missouri.

14.    Defendant Vernalis Group, Inc. is a New York corporation with its principal place

3

of business at 353 Lexington Ave, New York, New York 10016-0941.

15. Defendant Nader "Nate" Hanafy is Managing Director of Vernalis. Upon information and belief, Hanafy resides at 215 E. 80th St., Apt. 2D, New York, NY 10075-0546.

## JURISDICTION AND VENUE

16. This Court has subject matter jurisdiction over SI's claim under the Computer Fraud and Abuse Act (18 U.S.C. § 1030 et seq.) based on 28 U.S.C. § 1331 and has subject matter jurisdiction over the remaining claims pursuant to 28 U.S.C. § 1367.

17. This Court has personal jurisdiction over each Defendant because, as set forth in this Complaint, each Defendant has extensive contacts with Missouri, including committing tortious acts in Missouri, making contracts in Missouri, and/or transacting business in Missouri, such that this Court may exercise jurisdiction over them consistent with due process.

18. This Court has personal jurisdiction over Asim Pasha because he is a resident of Missouri, transacted business with Sporting Innovations in Missouri, and committed tortious acts in Missouri and aimed at SI's business based in Missouri.

19. This Court has personal jurisdiction over Zain Pasha because he is a resident of Missouri, transacted business with Sporting Innovations in Missouri, and committed tortious acts in Missouri and aimed at SI's business based in Missouri.

20. This Court has personal jurisdiction over PWXH, LLC because, upon information and belief, its principal place of business is in Missouri, it has transacted business in Missouri, and committed tortious acts in Missouri and aimed at SI's business based in Missouri.

21. This Court has personal jurisdiction over Vernalis Group, Inc. because it has transacted business with Sporting Innovations in Missouri and committed tortious acts in

4

Missouri and aimed at SI's business based in Missouri

22. This Court has personal jurisdiction over Nader "Nate" Hanafy because he has transacted business in Missouri, both with Sporting Innovations with Missouri residents Asim Pasha and Zain Pasha, and has committed tortious acts in Missouri and aimed at SI's business in Missouri.

23. Venue is proper in the Western District of Missouri under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims at issue occurred in this judicial district.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

### A. Zain's Employment Agreement

24. Zain Pasha joined Sporting Innovations in July 2013 and signed an Employment Agreement with Sporting Innovations. Zain signed his Employment Agreement on or around July 29, 2013. On behalf of Sporting Innovations, Zain's father Asim signed it on or around August 1, 2013.

25. Under Section 6 of his Employment Agreement, titled "Confidentiality," Zain agreed to "hold in strictest confidence and not disclose Confidential Information (as defined below) to anyone who is not also an employee of the Company or to any employee of the Company who does not also have access to such Confidential Information, without express written authorization of the Managing Partner of the Company."

26. The same paragraph defined "Confidential Information" as meaning:

> any trade secrets or proprietary or confidential information of Company and/or its customers, clients and partners, including but not limited to customer and client lead or contact lists, product release dates, or service roll-outs, processes, formulas, inventions, experimental developments, research projects, operating methods, cost, pricing, financial data or information, business plans and proposals, lawsuits, potential lawsuits or

5

other claims against the Company formal or otherwise, marketing and communication strategies and media information, confidential or personal information relating to Company's other employees, intellectual property, including but not limited to materials, either digital or otherwise, related to Sporting Innovations products, services or processes, data and information the Company receives in confidence from any other party, or any other secret or confidential matters of the Company.

27.   Under his Employment Agreement, Zain further agreed that he "will not use any Confidential Information for [his] own benefit or the benefit of others or to the detriment of the Company during [his] employment or thereafter."

28.   Zain also agreed to a Covenant Not to Compete as part of his Employment Agreement. In particular, Zain agreed:

that for a period of one (1) year after Associate is no longer employed by Sporting Innovations, Associate will not engage, directly or indirectly, either as proprietor, stockholder, partner, officer, employee, consultant, or otherwise, in the same or similar activities as were performed for Sporting Innovations in any business, including sports teams or venues, which distributes or sells products or provides services similar to those distributed, sold, or provided by Sporting Innovations during Associate's employment with Sporting Innovations. This Covenant Not to Compete is national in scope, and limited to industries within which Sporting Innovations does business.

Associate also agrees that for one (1) year after Associate is no longer employed by Sporting Innovations, Associate will not in any way divert or attempt to divert from Sporting Innovations any business or employees whatsoever or directly or indirectly solicit, agree to perform or perform services of any type that Sporting Innovations can render ("Services") for any client, person or entity who paid, engaged Sporting Innovations for Services, or who received the benefit of Sporting Innovation's Services, or with whom Associate had any substantial dealing while employed by Sporting Innovations.

**B.   Agreement Between Sporting Innovations and Vernalis**

29.   In October 2013, Sporting Innovations and Vernalis entered into a Master Consulting Services Agreement ("SI-Vernalis Agreement"). Nate Hanafy signed the SI-Vernalis Agreement on behalf of Vernalis, and Asim Pasha signed it on behalf of Sporting Innovations.

6

30.     Under the SI-Vernalis Agreement, Vernalis agreed to provide professional services to Sporting Innovations as authorized by the execution of Work Orders.

31.     The SI-Vernalis Agreement provided that "[d]uring the term of this Agreement, and for twelve months after the termination of this Agreement and all Work Orders hereto, neither party will solicit or employ employees of the other party without the prior written permission of the other Party."

### C. Defendants' Scheme To Misappropriate Sporting Innovations' Trade Secrets And Confidential Information And To Form PWXH, LLC

32.     Beginning in or around the middle of 2014, Asim took a series of actions that isolated different departments in Sporting Innovations and that funneled nearly all information and decision-making powers to him.  For instance, in or around June 2014, Asim removed other key executives' network and administrative access such that Asim alone had full administrative rights and access.  Asim also took actions to reduce the contact and interaction other SI employees had with Vernalis so he could have complete control with the relationship.

33.     In or around September 2014, Vernalis began sending substantially higher invoices to Sporting Innovations for its work.  Despite requests from SI, Vernalis has not provided detailed records reflecting the specific work being performed.

34.     In or around this same period, upon information and belief, Asim and Zain began exploring with Nate Hanafy and Vernalis the formation of a competing business. Upon information and belief, Kurt Ruf was aware of these activities

35.     Asim, Zain, and Nate Hanafy referred to their planned enterprise as "Knowledge Works" or "KWX."

36.     Asim and Zain attempted to conduct their competitive activities covertly, but they were careless and left traces of their improper actions on the SI network.

7

37. For instance, on September 29, 2014, Asim and Zain appear to have been chatting using the chat feature of their SI Gmail accounts, but only a single-line message remains, from Asim to Zain, which states "and then actual expenses we siphon." Roughly thirty minutes later, Asim sent Zain another single-line message: "Delete hangout from phone." Apart from these scraps, Asim and Zain appear to have deleted the contents of their communications on September 29, 2014. In addition, from its review to date, Sporting Innovations believes that Zain and Asim deleted a significant volume of materials, including emails and chats, that reflected their covert scheme.

38. On October 1, 2014, Kurt Ruf, Asim, and Zain (the latter two both using non-SI email addresses) were in the middle of an email exchange regarding what, upon information and belief, was the formation of a new and competing venture. In the middle of that exchange, Asim accidentally included Zain's SI email account in a response email. Asim's response email, sent at 1:36 pm, noted he had "just met" with a professional sports team and that there was "lot of . . . interest for KNOWLEDGE WORKS."

39. Five minutes later, Zain sent chat messages to Asim stating "the email you just sent is to my SI account." Within seconds, Asim replied "ok, so, I ca [sic] delete it. no worries." Zain, however, forwarded the email exchange to his personal Gmail account and forgot to delete it from his folder of sent emails on his SI email account.

40. Upon information and belief, in mid-October 2014, Zain acquired and registered a domain name — kwx.io — to use for their scheme. Zain also set up email addresses for himself and Asim ending in @kwx.io.

41. On October 14, 2014, Asim sent an email to Nate Hanafy and Bala Chandry, both of Vernalis, titled "Recap." Asim wrote:

8

I see three action items out of our meeting:

1. Jointly owned sports consultancy business
2. Vernalis partnership in Knowledge works (kWX) – details to figure out on share etc
3. Figure out a relationship between Vernalis and Pasha Holding (my family LLC)
…
Please treat all convos as confidential.

42.     Upon information and belief, Asim and Zain began using email accounts associated with the kwx.io domain to carry out their scheme, but they continued on occasion to leave traces of their misconduct on the SI system.

43.     For instance, on October 16, 2014, Zain sent a chat message to Asim stating "I feel like i'm more paranoid nowadays."  Four days later, during a chat Asim referred to an SI employee as "a mole."  Later that day, in another chat, Asim sent a message "hey log into your other gmail hangout" and specified Zain's personal Gmail account.

44.     On November 6, 2014, Zain sent chat messages to Asim stating "we have a cancer forming[.] i can feel it."  Asim responded "thats why there should be nthing [sic] here to get cancer on."

45.     On November 7, 2014, in a chat between Zain and Asim, amid Zain's comments about other SI employees, Asim instructed Zain to "focus on KWX."  Zain continued his complaints, referring to his "insecurity" and stating "I'm your son[.] they should be scared to piss me off[,] but they aren't." As the conversation continued, Asim ultimately responded "we have wasted 4 hrs of time on useless stuff where as [sic] we could we discussin KWX."  Again, Asim instructed Zain to "[f]ocus on things that MATTER (win wink [sic]) while keeping sufficietn [sic] visibility here . . . DONT get MAD, GET EVEN."  Zain responded "or get ahead."

9

46.     On November 9, 2014, Asim sent an email titled "new CONSULTING BIZ" to Nate Hanafy and Bala Chandra of Vernalis stating "I want to form a LLC to jointly own IP I will be designing for the clients and the client relationships tied to it."

47.     Nate Hanafy responded on November 15, 2014, suggesting that a new entity was "not justified unless you're bringing in substantial revenue" and until then "it may just be easier to operate via Vernalis (all the overhead is taken care of already) and share profits until we pick up steam."

48.     Meanwhile, on November 16, 2014, using a non-SI email account, Zain sent an email titled "Holding – Operating Entity Structure" to Asim.  Zain noted for the "Holding (Parent) [entity] – we have to incorporate this one (I was thinking PFG LLC (Pasha Family Group)."  Zain identified "KWX" as an "Operating Entity."

49.     In additional emails, Zain asked Asim if "you want this [entity] to be in MO," "who is Chairman," and whether they "want to get a P.O Box? Or just use our primary residence address?" Asim responded "PO Box," suggested "Officer Hazoor Baksh," and stated "Let's talk live today before u do anything."

50.     On November 17, 2014, Asim responded to Nate Hanafy's email regarding "operat[ing] via Vernalis" by suggesting that they "chat live."

51.     On November 22, 2014, Zain (using his @kwx.io email account) emailed to ask "Guys can we talk on 11/30 – after our KWX leadership call?"

52.     Upon information and belief, Asim, Zain, Nate Hanafy and others at Vernalis continued in December 2014 and onward to conduct covert activities related to the formation of a competing venture but did so through oral conversations (such as the mentioned "KWX leadership call") and likely using their @kwx.io email accounts.

10

53. In early January 2015, Asim's father-in-law (and Zain's grandfather) passed away in Pakistan. Both Asim and Zain were out of the country for a prolonged period for the funeral. In and around that period, Asim was also absent for medical reasons, representing to other SI executives that he was receiving medical treatment in Dubai, as he had done in the past.

54. On January 27, 2015, Asim had a chat with Srikanth Balasundaram of Vernalis regarding a conference call. Asim asked that Srikanth "cancel current invite and send a new one," and confirming with Srikanth that the invite should *not* include an additional Sporting Innovations employee who was unaware of their secret scheme.

55. On January 28, 2015, Asim and other SI executives had an off-site executive strategy meeting in Kansas City. At the meeting, Asim never said a word about Knowledge Works, KWX, or any potential partnership or new entity to be formed with Vernalis.

56. Upon information and belief, Asim, Zain, Nate Hanafy, and Bala Chandra met for a "working session / dinner" on January 31, 2015 at the Vernalis offices in New York. According to the calendar invitation, Asim was the "organizer" of the meeting.

57. In early February, Asim announced a promotion for Zain at Sporting Innovations.

58. On February 6, 2015, using his @kwx.io email account, Asim sent an email titled "KWX – concept" to another of his accounts linked with SI in which Asim set forth a business model and strategy incorporating trade secrets, confidential information, and ideas belonging to Sporting Innovations.

59. Also February 6, 2015, a Certificate of Formation was filed with the Delaware Secretary of State, Division of Corporations, for an entity named PWXH LLC. Upon information and belief, Zain made the filing.

60. According to a resolution of PWXH dated February 9, 2015, Zain is a Member

and Chief Operating Officer of PWXH and Asim is a Member and Chairman of PWXH. Asim's wife, Sabah Pasha ("Sabah"), is a Member and Chief Executive Officer of PWXH.

61.     On February 10, 2015, using a personal Gmail account, Zain sent a message to the personal email accounts of Asim and Sabah titled "EIN for PWXH LLC." Zain asked for someone to "go with me to get the bank account setup." At some point in the exchange, Asim's Sporting Innovations email address was added, and Zain responded "Papa – How did your sporting innovations address get added to this? I took it off…."

62.     On February 17, 2015, in a chat with Asim, Srikanth Balasundaram of Vernalis sent a message "not sure, if I can ask – does [another Sporting Innovations employee] know about KWX?" Asim responded "no." Srikanth replied "good – i sensed it. That's why I am not bringing it."

63.     On February 26, 2015, Zain, using a personal email account, sent an email titled "Ops Update – PWXH" to Asim and Sabah noting that bank "[a]ccounts have been activated" and "[d]ebit cards are activated." Zain's email signature described him as "Chief Operating Officer PWXH LLC."

64.     Throughout the activities described above Asim was the Co-CEO of Sporting Innovations and Zain was a Product Manager at Sporting Innovations. At no time did Asim or Zain disclose to Sporting Innovations their activities with Vernalis and Nate Hanafy related to the formation and development of any KWX/Knowledge Works company or related to the formation of PWXH LLC.

**D.  Asim's and Zain's Departures From Sporting Innovations**

65.     As noted above, in 2014 Asim had ensured that he alone had full administrative and network rights and access to the SI network.

12

66.     Beginning in late February 2015, Asim ignored and nearly stopped responding to any emails sent to his SI address.  Among inquires which Asim ignored were repeated requests that he provide documentation for tens of thousands of dollars in spending on his SI credit card, including significant amounts of travel to Dubai and other international locations. Asim also ignored requests to use his sole full administrative access to create a co-administrator account with equal access and rights to the SI network.

67.     In the past, Asim had periods of irregular or delayed business and email activity that were represented to coincide with medical treatment, often purportedly received in Dubai. SI executives initially believed Asim to be recovering from medical treatment and that his responses were delayed for that reason.

68.     In or around late February or early March 2015, SI was able to create a co-administrator account with equal rights and access to SI's email system. At this time, Asim finally responded to certain emails and asked about the administrative access changes. Sporting Innovations told Asim that there needed to be a co-administrator account.

69.     Although Asim stated the change was acceptable, within days Asim changed the access again.  SI had been clear that Asim was authorized only to be a co-administrator on the SI system.  Without authorization, however, Asim created a new account for himself to which he granted full administrative rights and access. Asim then proceeded to remove significant administrative access and rights from both the account of his new co-administrator and his old account, which he apparently hoped would deceive the co-administrator into thinking he and Asim had equal access and administrative rights.

70.     The co-administrator, however, noticed the new account Asim had created and also realized the new account alone had the full extent of administrative rights and access,

whereas his account and Asim's old account had limited and restricted access and rights. SI ultimately was able to remove Asim's new account and remove any administrative access or rights from all of his accounts.

71. On March 16, 2015, Zain sent a resignation notice to Sporting Innovations, stating that his last day would be March 27, 2015. Zain refused to meet for an exit interview or to return his SI-issued laptop or access control cards to Kansas City. Instead, Zain responded that he "will give it to my dad." Meanwhile, Asim continued to ignore emails.

72. To date, neither Asim nor Zain has returned their SI-issued laptop computers to Sporting Innovations. Upon information and belief, Asim and Zain possess on those laptops substantial trade secret and other confidential information belonging to Sporting Innovations.

73. On June 16, 2015, Sporting Innovations sent notice to Asim that he had been terminated.

74. Each allegation stated above is incorporated into every count below. In addition, all allegations in each count are incorporated into all other counts.

## COUNT I — COMPUTER FRAUD AND ABUSE ACT
## AGAINST ASIM PASHA AND ZAIN PASHA

75. SI's computer systems and databases are used in interstate and foreign commerce. Accordingly, SI's computer systems and databases are "protected computers" as defined in 18 U.S.C. § 1030(e)(2).

76. By engaging in the conduct set forth in this Complaint, Defendants Asim Pasha and Zain Pasha have violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(2)(c), by intentionally accessing SI's protected computer(s) without authorization or by exceeding authorized access to such computer(s), and by obtaining information from protected computer(s).

77. By engaging in the conduct set forth in this Complaint, Defendants Asim Pasha

14

and Zain Pasha have violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(4), by knowingly, and with intent to defraud Sporting Innovations, accessing SI's protected computer(s) without authorization or by exceeding authorized access to such computer(s), and by means of such conduct furthered the intended fraud and obtained one or more things of value, including but not limited to SI's trade secrets and confidential information.

78.     By engaging in the conduct set forth in this Complaint, Defendants Asim Pasha and Zain Pasha have caused damage to Sporting Innovations in an amount that exceeds $5,000 between the period of September 2014 to date and continue to cause damage to Sporting Innovations.

WHEREFORE, Sporting Innovations respectfully requests that the Court enter judgment in its favor and against Defendants Asim Pasha and against Zain Pasha for: monetary damages in excess of $5,000 in an amount to be determined at trial; and such other and further relief as the Court deems just and proper.

## COUNT II — BREACH OF CONTRACT
### AGAINST ZAIN PASHA

79.     The Employment Agreement between Sporting Innovations and Zain Pasha is a valid and binding contact.

80.     The Employment Agreement is supported by sufficient consideration, and Sporting Innovations has performed all its obligations under the Employment Agreement.

81.     The covenant not to compete agreement is reasonable, no greater than fairly required for the protection of Sporting Innovations, and necessary to preserve the legitimate business interests of Sporting Innovations, including its goodwill among clients, its client relationships and client contacts, and its confidential, proprietary, and trade secret information.

82.     As set forth above, Zain has breached the Employment Agreement in multiple

15

respects, including but not limited to violating his agreement not to use SI's confidential information for his benefit or to the detriment of SI and to violating the covenant not to compete.

83.     As a direct and proximate result of Zain's breaches of the Employment Agreement, Sporting Innovations has been damaged and continues to suffer damages in an amount to be determined at trial.

WHEREFORE, Sporting Innovations respectfully requests that the Court enter judgment in its favor and against Zain Pasha for: monetary damages Sporting Innovations has incurred as a result of Zain Pasha's breach of contract; a preliminary injunction restraining and enjoining Zain Pasha (including his agents, servants, employees, and all other acting in concert with him) from using SI's confidential information and trade secrets and from competing against Sporting Innovations as set forth in the covenant not to compete; a permanent injunction enjoining Zain Pasha (including his agents, servants, employees, and all other acting in concert with him) from breaching the Employment Agreement; and such other and further relief as the Court deems just and proper.

## COUNT III — BREACH OF CONTRACT
## AGAINST VERNALIS GROUP, INC.

84.     The SI-Vernalis Agreement between Sporting Innovations and Vernalis Group, Inc. is a valid and binding contact.

85.     The SI-Vernalis Agreement is supported by sufficient consideration, and Sporting Innovations has performed all its obligations under the Employment Agreement.

86.     As set forth above, Vernalis has solicited Asim Pasha and Zain Pasha to work secretly together with Vernalis in developing and forming a competing business, which Defendants refer to as Knowledge Works or KWX.

87.     In addition, as set forth above, in or around the period that Vernalis and its

16

employees began covertly working with Asim Pasha and Zain Pasha to develop and form a competing business, Vernalis began sending substantially higher invoices to Sporting Innovations for its work. Despite requests from SI, Vernalis has not provided detailed records reflecting the specific work being performed. Upon information and belief, the substantially higher invoices sent by Vernalis in fact result from Defendants' misuse of Vernalis resources to develop and form their competing business, while secretly causing Sporting Innovations to foot Defendants' bill for competing against it.

88. As set forth above, Vernalis has breached the SI-Vernalis Agreement in multiple respects.

89. As a direct and proximate result of the breaches by Vernalis of the SI-Vernalis Agreement, Sporting Innovations has been damaged and continues to suffer damages in an amount to be determined at trial

WHEREFORE, Sporting Innovations respectfully requests that the Court enter judgment in its favor and against Vernalis Group, Inc. for: monetary damages exceeding $75,000 in an amount to be determined at trial that Sporting Innovations has incurred as a result of Vernalis' breach of contract; a preliminary injunction restraining and enjoining Vernalis (including its agents, servants, employees, and all other acting in concert with it) from soliciting or employing employees of Sporting Innovations; a permanent injunction enjoining Vernalis (including its agents, servants, employees, and all other acting in concert with it) from breaching the SI-Vernalis Agreement; and such other and further relief as the Court deems just and proper.

## COUNT IV — BREACH OF FIDUCIARY DUTY AND DUTY OF LOYALTY
## AGAINST ASIM PASHA AND ZAIN PASHA

90. At all material times, Asim Pasha and Zain Pasha were employees of Sporting Innovations and owed Sporting Innovations a fiduciary duty not to act contrary to the interests of

17

Sporting Innovations during the course of their employment.

91.     At all material times, Asim Pasha and Zain Pasha were employees of Sporting Innovations and owed a duty of loyalty to Sporting Innovations not to exploit their positions in the company for their own personal benefits or to hinder the ability of Sporting Innovations to continue and develop its business.

92.     At all material times, Asim Pasha and Zain Pasha were employees of Sporting Innovations and owed a duty not to compete with Sporting Innovations concerning the subject matter of their employment.

93.     As set forth above, however, Asim Pasha and Zain Pasha, while employed by Sporting Innovations, in fact engaged in a calculated and covert scheme to compete directly with Sporting Innovations and to provide themselves and their co-conspirators Vernalis Group, Inc., Nate Hanafy, and PWXH, LLC with an economic advantage over Sporting Innovations.

94.     Upon information and belief, Asim Pasha and Zain Pasha, while employed by Sporting Innovations, knowingly misappropriated and misused SI's resources, confidential information and secrets for their personal benefit and to the detriment of Sporting Innovations.

95.     The acts and conduct of Asim Pasha and Zain Pasha are a willful and malicious violation of their fiduciary duties and duties of loyalty to Sporting Innovations, which were perpetrated without justification.

96.     Sporting Innovations faces immediate, irreparable, and irrevocable harm as a result of the conduct described in this Complaint.  Injunctive relief is therefore necessary to afford Sporting Innovations adequate relief.

97.     The harm faced by Sporting Innovations outweighs any harm Asim Pasha or Zain Pasha may suffer from this Court's grant of injunctive and other relief, and it is in the public

18

interest for the Court to grant the requested injunctive relief.

98. Sporting Innovations has also suffered damages and continues to suffer damages as a result of these breaches by Asim Pasha and Zain Pasha in an amount to be determined at trial.

WHEREFORE, Sporting Innovations respectfully requests that the Court enter judgment in its favor and against Asim Pasha and against Zain Pasha for: monetary damages exceeding $75,000 that in an amount to be determined at trial that Sporting Innovations has incurred as a result of the breaches by Asim Pasha and Zain Pasha, including but not limited disgorgement of the salaries paid by Sporting Innovations to Asim Pasha and Zain Pasha during the period of their breaches; a preliminary injunction restraining Asim Pasha and Zain Pasha (including their agents, servants, employees, and all other acting in concert with them) from using SI's confidential information and trade secrets, from competing against Sporting Innovations, and enjoining Asim Pash and Zain Pasha to return to Sporting Innovations all property and intellectual property, including confidential information and trade secrets, in their possession, custody, or control that belongs to Sporting Innovations; a permanent injunction enjoining and restraining Asim Pasha and Zain Pasha (including their agents, servants, employees, and all other acting in concert with them) from using SI's confidential information and trade secrets; an award of punitive damages in an amount sufficient to deter Asim Pasha and Zain Pasha and others from any continuation or repetition of the same or similar misconduct set forth above; and such other and further relief as the Court deems just and proper.

## COUNT V— TORTIOUS INTERFERENCE WITH BUSINESS EXPECTANCY AGAINST ALL DEFENDANTS

99. Sporting Innovations has expended significant time, money, and effort to cultivate ongoing and prospective business relationships with its clients and with potential clients, and has

19

agreements with clients to provide technology consulting services.

100.    Defendants knew about these business relationships and agreements as a result of their employment and/or commercial dealings with Sporting Innovations.

101.    Upon information and belief, Defendants have used and are using SI's client information and contacts, SI's confidential, proprietary, and trade secret information to solicit business for PWXH, LLC, Knowledge Works, and/or KWX (or another as-yet unknown competitive entity) from clients with whom Defendants know Sporting Innovations has contracts and/or prospective business relationships and agreements.

102.    Defendants' interference with SI's contracts and prospective business opportunities was and is intentional, improper, and without justification.  Defendants have acted maliciously, willfully, wantonly, and/or with reckless disregard for the rights of Sporting Innovations.

103.    Defendants' actions constitute tortious interference under Missouri law, and Sporting Innovations has been and continues to be damaged by Defendants' tortious interference in an amount to be determined at trial.

WHEREFORE, Sporting Innovations respectfully requests that the Court enter judgment in its favor and against all Defendants for: monetary damages exceeding $75,000 in an amount to be determined at trial that Sporting Innovations has incurred as a result of Defendants' tortious interference; an award of punitive damages in an amount sufficient to deter Defendants and others from any continuation or repetition of the same or similar misconduct set forth above; and such other and further relief as the Court deems just and proper.

### COUNT VI — TORTIOUS INTERFERENCE WITH CONTRACT
### AGAINST VERNALIS GROUP, INC., NADER HANAFY, AND PWXH, LLC

104.    Sporting Innovations and Zain Pasha were parties to an Employment Agreement,

which is a valid and binding contact between them.

105.    Defendants Vernalis Group, Inc., Nader Hanafy, and PWXH, LLC had at all relevant times knowledge of the existence of the Employment Agreement between Sporting Innovations and Zain Pasha.

106.    Beginning in or around September 2014 and continuing in February and March 2015, Defendants Vernalis Group, Inc., Nader Hanafy, and PWXH, LLC intentionally procured or attempted to procure the breach of the Employment Agreement between Sporting Innovations and Zain Pasha by inducing and/or aiding and abetting Zain Pasha to breach the Employment Agreement by using SI's confidential information and trade secrets and competing with Sporting Innovations.

107.    Defendants Vernalis Group, Inc., Nader Hanafy, and PWXH, LLC have no justification for such actions, and their actions were and are intentional, improper, and outrageous and constitute tortious interference with contract under Missouri law.

108.    As result of the tortious interference with contract by Defendants Vernalis Group, Inc., Nader Hanafy, and PWXH, LLC, Sporting Innovations has suffered and continues to suffer damages in an amount to be determined at trial.

109.    In tortiously interfering with the Employment Agreement between Sporting Innovations and Zain Pasha, Defendants Vernalis Group, Inc., Nader Hanafy, and PWXH, LLC have been and are acting maliciously, willfully, wantonly, and/or with reckless disregard for the rights of Sporting Innovations.

WHEREFORE, Sporting Innovations respectfully requests that the Court enter judgment in its favor and against Defendants Vernalis Group, Inc., Nader Hanafy, and PWXH, LLC for: monetary damages exceeding $75,000 in an amount to be determined at trial that Sporting

Innovations has incurred as a result of Defendants' tortious interference in an amount to be determined at trial; an award of punitive damages in an amount sufficient to deter Defendants and others from any continuation or repetition of the same or similar misconduct set forth above; and such other and further relief as the Court deems just and proper.

## COUNT VII — REPLEVIN
## AGAINST ASIM PASHA AND ZAIN PASHA

110.    As set forth above, Asim Pasha and Zain Pasha had and have possession of property, including but not limited to laptop computers and access cards, that belongs to Sporting Innovations.

111.    Sporting Innovations is the rightful and lawful owner of this property, is entitled to its possession, and has demanded its return.

112.    Despite SI's request for the return of its property, Asim Pasha and Zain Pasha have exercised unauthorized control over the property by failing and refusing to return it to Sporting Innovations.

113.    Asim Pasha and Zain Pasha have deprived Sporting Innovations of its right to possession over its property.

114.    At this time, the total value of the property cannot be determined.

115.    In the event the property is not delivered to Sporting Innovations, then Sporting Innovations is entitled to the value of the property.

116.    The actions of Asim Pasha and Zain Pasha in exercising unauthorized control over SI's property have been and are intentional, improper, and outrageous, and they have been and are acting maliciously, willfully, wantonly, and/or with reckless disregard for the rights of Sporting Innovations.

WHEREFORE, Sporting Innovations respectfully requests that the Court enter judgment

in its favor and against Asim Pasha and Zain Pasha and an Order for Replevin providing for immediate recovery of SI's property, and for the value of the property not delivered; an award of punitive damages in an amount sufficient to deter Defendants Asim Pasha and Zain Pasha and others from any continuation or repetition of the same or similar misconduct set forth above; and such other and further relief as the Court deems just and proper.

**COUNT VIII — CONVERSION**
**AGAINST ASIM PASHA AND ZAIN PASHA**

117.    As set forth above, Asim Pasha and Zain Pasha had and have possession of property, including but not limited to confidential, proprietary and trade secret information that belongs to Sporting Innovations.

118.    Sporting Innovations is the rightful and lawful owner of this property, is entitled to its possession, and has demanded its return.

119.    Despite SI's request for the return of its property, Asim Pasha and Zain Pasha have exercised unauthorized control over the property by failing and refusing to return it to Sporting Innovations.

120.    Asim Pasha and Zain Pasha have wrongfully taken possession of SI's property and appropriated it for their own use in defiance of SI's rights to its possession.

121.    At this time, the total value of the property cannot be determined and the extent of the property taken cannot be determined.

122.    The actions of Asim Pasha and Zain Pasha in exercising unauthorized control over SI's property have been and are intentional, improper, and outrageous, and they have been and are acting maliciously, willfully, wantonly, and/or with reckless disregard for the rights of Sporting Innovations.

WHEREFORE, Sporting Innovations respectfully requests that the Court enter judgment

23

in its favor and against Asim Pasha and Zain Pasha for: monetary damages in an amount to be determined at trial, plus interest on the value of the converted property from the date of conversion; an award of punitive damages in an amount sufficient to deter Defendants Asim Pasha and Zain Pasha and others from any continuation or repetition of the same or similar misconduct set forth above; and such other and further relief as the Court deems just and proper.

### COUNT IX — COMPUTER TAMPERING UNDER R.S. MO § 537.25.1 AGAINST ASIM PASHA AND ZAIN PASHA

123.    As set forth above and upon information and belief, Asim Pasha and Zain Pasha have knowingly and without authorization, or without reasonable grounds to believe that they had such authorization, modified or destroyed data or programs resident or existing internal to SI's computers, computer system, and/or computer network, in violation of R.S. Mo. § 569.095.1(1).

124.    In addition, upon information and belief, Asim Pasha and Zain Pasha have knowingly and without authorization, or without reasonable grounds to believe that they had such authorization, disclosed or taken data, programs, or supporting documentation, residing or existing external to SI's computers, computer system, and/or computer network, in violation of R.S. Mo. § 569.095.1(3).

125.    As a result of the illegal accessing of and tampering with SI's computers, computer systems, and/or computer network, Sporting Innovations has suffered and continues to suffer damages in an amount to be determined at trial.

126.    The actions of Asim Pasha and Zain Pasha in connection with their illegal accessing of and tampering with SI's computers, computer systems, and/or computer network have been and are intentional, improper, and outrageous, and they have been and are acting maliciously, willfully, wantonly, and/or with reckless disregard for the rights of Sporting

24

Innovations.

WHEREFORE, Sporting Innovations respectfully requests that the Court enter judgment in its favor and against Asim Pasha and Zain Pasha for: monetary damages in an amount to be determined at trial; an award of punitive damages in an amount sufficient to deter Defendants Asim Pasha and Zain Pasha and others from any continuation or repetition of the same or similar misconduct set forth above; an award of reasonable attorneys' fees, as permitted by R.S. Mo. § 537.525.2; and such other and further relief as the Court deems just and proper.

## COUNT X — MISAPPROPRIATION OF TRADE SECRETS
### AGAINST ALL DEFENDANTS

127.    Sporting Innovations has proprietary and confidential technology, data, source code, programs, information, and business strategies and methods that constitute trade secrets under the Missouri Uniform Trade Secrets Act, R.S. Mo. § 416.453.

128.    SI's trade secrets include, but are not limited to: technology, data, source code, programs, information, and business strategies and methods that relate to collecting, processing, and analyzing data relating to fans and customers of professional and college sports teams and venues and to providing fan-engagement strategies to professional and college sports teams and venues.

129.    SI's trade secrets have independent economic value in that SI has used their trade secrets to provide services and licenses to third parties for their commercial use.

130.    SI's trade secrets are further valuable because they are not generally known or readily accessible, by proper means, to the public or to other persons or entities that could obtain economic value from the use of SI's trade secrets.

131.    Sporting Innovations has taken reasonable measures to maintain the secrecy of their trade secrets, including but not limited to the adoption of confidentiality policies and the

requirement that employees sign confidentiality agreements. In addition, Sporting Innovations includes confidentiality and non-disclosure provisions in its contracts with clients.

132.    Defendants acquired SI's trade secrets either knowing that they were acquired by improper means or having reason to know the trade secrets with acquired by improper means.

133.    Upon information and belief, Defendants have disclosed and used SI's trade secrets and, at the time they did so, knew or had reason to know that the trade secrets were acquired without express or implied consent of Sporting Innovations and/or were acquired from a person who used improper means to acquire them or acquired under circumstances giving rise to a duty to maintain secrecy.

134.    Defendants' misappropriation of SI's trade secrets, and their use of SI's trade secrets to cause competitive injury to Sporting Innovations, is malicious, willful, and outrageous because of Defendants' evil motive or reckless indifference to the rights of Sporting Innovations, warranting an award of punitive damages.

135.    Sporting Innovations faces immediate, irreparable, and irrevocable harm as a result of the conduct described in this Complaint.  Injunctive relief is therefore necessary to afford Sporting Innovations adequate relief.

136.    The harm faced by Sporting Innovations outweighs any harm Defendants may suffer from this Court's grant of injunctive and other relief, and it is in the public interest for the Court to grant the requested injunctive relief.

137.    As a direct and proximate result of Defendants' misappropriation of SI's trade secrets, Sporting Innovations has suffered and continues to suffer damages in an amount to be proven at trial.

WHEREFORE, Sporting Innovations respectfully requests that the Court enter judgment

in its favor and against all Defendants for: monetary damages exceeding $75,000 in an amount to be determined at trial that, which amount may include but is not limited to reasonable royalties for Defendants' misappropriation and/or use of SI's trade secrets, actual losses incurred by Sporting Innovations as a result of Defendants' misappropriation and/or use of SI's trade secrets, and/or unjust enrichment to Defendants as a result of their misappropriation and/or use of SI's trade secrets; a preliminary injunction restraining and enjoining Defendants (including their agents, servants, employees, and all other acting in concert with them) from misappropriating, using, and/or disclosing SI's trade secrets; from soliciting or employing employees of Sporting Innovations; a permanent injunction enjoining Defendants (including their agents, servants, employees, and all other acting in concert with them) from misappropriating, using, and/or disclosing SI's trade secrets; an award of punitive damages in an amount sufficient to deter Defendants and others from any continuation or repetition of the same or similar misconduct set forth above; and such other and further relief as the Court deems just and proper

## COUNT XI — CIVIL CONSPIRACY
## AGAINST ALL DEFENDANTS

138.    Defendants' actions in violation of applicable law as set forth in this Complaint were the product of agreement among them and concerted action by Defendants to injure Sporting Innovations and its business.

139.    Defendants' agreement and concerted action to implement their conspiracy in violation of applicable law constitute an unlawful civil conspiracy.

140.    Defendants' civil conspiracy has caused damage and continues to cause damages to Sporting Innovations.

141.    Sporting Innovations has suffered and continues to suffer damages in an amount to be proven at trial.

142.    Defendants' agreement and concerted action to implement their conspiracy in violation of applicable law have been and are intentional, improper, and outrageous.  Defendants have been and are acting maliciously, willfully, wantonly, and/or with reckless disregard for the rights of Sporting Innovations.

WHEREFORE, Sporting Innovations respectfully requests that the Court enter judgment in its favor and against Defendants for: monetary damages exceeding $75,000 in an amount to be determined at trial; an award of punitive damages in an amount sufficient to deter Defendants and others from any continuation or repetition of the same or similar misconduct set forth above; and such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMANDED

Sporting Innovations demands a jury trial on all causes of action alleged in this Complaint.


Dated:  June 17, 2015                            Respectfully submitted,


                                                ROUSE HENDRICKS GERMAN MAY PC


                                                By   /s/Kirk T. May
                                                      Kirk T. May          MO # 31657
                                                      Jeremy M. Suhr       MO # 60075
                                                      1201 Walnut Street, Suite 2000
                                                      Kansas City, MO 64106
                                                      Tele:   (816) 471-7700
                                                      Fax:    (816) 471-2221
                                                      Email: kirkm@rhgm.com
                                                      Email: jeremys@rhgm.com

                                                *Attorneys for Sporting Innovations KC LLC*